# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID W. BREWER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-16-576-SPS ) |
| COMMISSIONER of the Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

The claimant David W. Brewer requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was twenty-three years old at the time of the administrative hearing (Tr. 36). He completed the twelfth grade and some vocational classes, and has no past relevant work (Tr. 25, 197). The claimant alleges that he has been unable to work since September 5, 2013, due to a gunshot wound to the head (Tr. 196).

**Procedural History**

On September 30, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 12, 2015 (Tr. 15-27). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to lift/carry twenty pounds occasionally and less than ten pounds frequently, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. The ALJ further determined that he could never climb ladders, ropes, and scaffolding, and that he must avoid unprotected heights and dangerous moving machinery. Finally, the ALJ limited the claimant to simple, repetitive tasks with routine supervision (Tr. 20). The ALJ classified this as "less than

sedentary" work (Tr. 20). The ALJ thus concluded that although the claimant had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, document scanner, clerical mailer, and touch-up screener (Tr. 25-26).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly identify jobs he could perform, and (ii) failing to properly assess a treating physician opinion that had been submitted to the Appeals Council. The Court agrees with the claimant's first contention, and the decision of the Commissioner must therefore be reversed.

The ALJ determined that the claimant had the severe impairment of residuals of gunshot wound to the face (Tr. 17). At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were other jobs the claimant could perform with his limitations (Tr. 56-57). He posed a couple of hypothetical questions requiring the VE to assume various limitations and identify the work someone with such limitations could perform. First, the ALJ posited an individual with the age, education, and work history of the claimant, who "would be limited to sedentary work. The individual would be limited to performing just simple repetitive tasks with routine supervision; would need to avoid unprotected heights and dangerous moving machinery; would be unable to climb ladders, ropes or scaffolding." (Tr. 56). The VE identified three sedentary jobs such a person could perform: (i) document scanner, DICOT § 249.587-018; (ii) clerical mailer, DICOT § 209.587-010; and (iii) touch-up screener, DICOT § 726.684-110 (Tr. 56). In the following hypothetical, the ALJ asked about an individual with all the above limitations,

but would also be off task 20% of the workday, with a corresponding 20% reduction in productivity (Tr. 56). The VE responded that there would be no jobs available. Notably, the ALJ did not ask the VE if her testimony varied from the job descriptions contained in the Dictionary of Occupational Titles ("DOT") (Tr. 56-57).

In his written decision, the ALJ determined that the claimant's RFC included the limitations from the first hypothetical posed to the VE (Tr. 20). He then adopted the VE's testimony that the claimant could perform the sedentary jobs of document scanner, clerical mailer, and touch-up screener (Tr. 26). Furthermore, the ALJ specifically found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 26).

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any conflict between her testimony and the DOT, there *is* a conflict that the ALJ was required to resolve. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Here, a conflict exists with all three jobs identified. The first job, document scanner, has a reasoning level of 3, *see* DICOT § 249.587-018. A reasoning level of 3 is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* DICOT § 249.587-018. The remaining two jobs, clerical mailer and touch-up screener, have reasoning levels of 2. A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DICOT §§ 209.587-010, 726.684-110.

The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. This appears to be in direct contrast to the ALJ's RFC, which found that the claimant could only perform simple, repetitive tasks with routine supervision (Tr. 20). If a claimant is limited to simple tasks, it stands to reason that a job requiring the ability to deal with problems involving several concrete variables (a reasoning level 3), or the ability to understand and carry out detailed but uninvolved written or oral instructions and with problems involving a few concrete variables (a reasoning level 2), would create a conflict. *See McKinnon v. Astrue,* 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart,* 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003)

(examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091. *See also Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir.2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Here, there *is* a conflict that the ALJ was required to resolve. *See Haddock*, 196 F.3d at 1091.

The Commissioner nevertheless asserts that the law is unsettled and does not require reversal in this case because these so-called GED levels are related to the claimant's education level and background. *Anderson v. Colvin*, 514 Fed. Appx. 756, 764 (10th Cir. 2013) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable

for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development."); *Mounts v. Astrue*, 479 Fed. Appx. 860, 868 (10th Cir. 2012) ("Job descriptions in the [DOT] contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job."). However, the Court finds that the cases cited by the Commissioner, on their facts, are distinguishable from the present case in that they either determined harmless error because other jobs had been identified (which is *not* the absence of error), or referred to illiteracy or a different level of reasoning than the limitation to simple, repetitive tasks that is present in this case. In the Tenth Circuit, this apparent inconsistency is reversible error. *See Hackett*, 395 F.3d at 1176 (finding a limitation to simple and routine work tasks "inconsistent with the demands of level-three reasoning," and reversing "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."). *See also Ward v Colvin*, 2015 WL 9438272, at *3 (W.D. Okla. Sept. 17, 2015) (slip op.) ("The Court declines to find, as urged by the Commissioner, that to the extent GED reasoning levels are not specific mental or skill requirements, they can be disregarded when addressing the mental demands of jobs listed in the DOT.").

Although the unresolved conflict as to the claimant's mental limitations would have been harmless error if other jobs had been identified that did not pose a conflict, it is not harmless here because the three jobs identified had reasoning levels of 2 or 3. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether

claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further proceedings. On remand, the ALJ should resolve the conflict as to the claimant's literacy and the skill level of the work he can perform, and determine what impact, if any, such resolution has on the issue of the claimant's disability.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**